UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AIRCRAFT SERVICE INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS AFL CIO LOCAL 117, et al.,<br><br>Defendants. | CASE NO. C12-1729JLR<br><br>ORDER ENTERING PRELIMINARY INJUNCTION |

This matter comes before the court on Plaintiff's motion for a temporary restraining order and/or preliminary injunctive relief. (Mot. (Dkt. # 4).) The court previously granted a temporary restraining order in this case, and now, being fully advised and having considered the relevant law, the submissions of the parties, and oral argument, the court GRANTS Plaintiff's motion for a preliminary injunction.

//

ORDER- 1

## I. INTRODUCTION

This dispute revolves around whether the court should enjoin a possible strike at Seattle-Tacoma International Airport ("SeaTac Airport"). The Plaintiff, Aircraft Service International, Inc. (ASII) is an aircraft service provider that, among other things, refuels approximately 75 percent of the airplanes at SeaTac Airport. (Stevenson Decl. (Dkt. # 13) at 1.) Defendants are ASII's employees plus a local organization working with them called Working Washington, and Working Washington's "Campaign Director," Jonathan Rosenblum. (Compl. (Dkt. # 1) ¶¶ 11-15.) The dispute began when ASII suspended employee Alex Popescu under controversial circumstances (which are factually disputed). (*See infra*; *see also* Stevenson Decl. at 2-3.) ASII's employees are threatening to strike if ASII does not permit Mr. Popescu to return to work. *Id.*

The court concludes that the law does not permit these employees to strike. Airline carriers such as ASII are subject to a law from the railroad era, the Railway Labor Act ("RLA") that prohibits a carrier's employees from striking at will. *See* 45 U.S.C. §§ 151-164. Instead, railroad and airline carriers and their employees first must attempt to resolve their disagreements through prescribed alternative dispute resolution processes. The purpose of this law is to avoid disrupting commerce—to keep the railroads moving and the planes flying. The parties dispute whether the RLA in fact prevents the Defendant-employees from striking. Defendants argue that it does not, and further, that under the Norris-LaGuardia Act ("NLGA"), the court has no authority to enter an anti-strike injunction. *See* 29 U.S.C. § 104. The court agrees with the Plaintiff that under the RLA, it would likely be unlawful for Defendants to strike before first attempting to

1 resolve their dispute through other means. Further, the court concludes that, under
2 controlling Supreme Court precedent, it has authority to issue an injunction
3 notwithstanding the NLGA. Accordingly, the court enters a preliminary injunction
4 enjoining any strike pending the resolution of this lawsuit.

## II.   FACTUAL BACKGROUND

In the last few months, there have been efforts by various parties to increase the wages of employees at SeaTac Airport, including ASII employees. (Stevenson Decl. at 2.) Defendant Alex Popescu is an ASII employee. (*Id.*)

ASII suspended Alex Popescu from work on September 14, 2012. (*Id.*) The parties dispute the reason for Mr. Popescu's suspension: ASII alleges that he exhibited inappropriate behavior, including "screaming obscenities at a supervisor." (Mot. at 4.) Defendants allege that he was suspended in retaliation for his leadership on workplace safety issues, including testifying at a public hearing of the Seattle Port Commission. (Resp. at 4-5.) Now, ASII alleges that Defendants have seized on Mr. Popescu's suspension as a *cause célèbre* and are using it as a basis to pressure ASII into increasing wages and improving working conditions. (Mot. at 4.)

Defendants held a press conference on October 3, 2012, during which they claimed that a majority of ASII employees had voted to go on strike. (Stevenson Decl. at 3.) They followed up this press conference by delivering to ASII an "official notification of the strike authorization vote":

ORDER- 3

> This past weekend, ASIG[1] workers met and voted overwhelmingly to authorize a strike if you do not immediately return [Popescu] to work with back pay, stop all management attempts at retaliation and intimidation, and take immediate steps to address the numerous safety issues at ASIG that we've repeatedly brought to you, Alaska Airlines, and the Port of Seattle Commissioners.

*Id.* This notice, in conjunction with several other actions taken by Defendants, *see id.* at 3-4, suggested to ASII that Defendants were about to go on strike. To prevent this from occurring, ASII filed a complaint in this court requesting a temporary restraining order, a preliminary injunction, and declaratory relief. (*See* Compl. at 9-10.)

ASII alleges that if its fuelers went on strike, it would be unable to replace them on short notice and there would be "delay and cancellation of numerous flights at SEA-TAC" which could "damage [ASII's] relationship" with its customers and the Airport. (Mot. at 4.)

## III. ANALYSIS

### A. Preliminary Injunction Standard

A district court should grant a preliminary injunction if it is convinced that each of the following four conditions are met: (1) the moving party is likely to succeed on the merits; (2) irreparable harm is likely if the injunction is not granted; (3) the balance of equities tips in the moving party's favor; and (4) an injunction is in the public interest.

---

[1] ASII does business under the trade name Aircraft Service International Group ("ASIG"). (Mot. at 1.)

ORDER- 4

*Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008).[2] A preliminary injunction is an extraordinary remedy that can only be awarded upon a clear showing that the plaintiff is entitled to it. *Id.* at 22.

## B. ASII Has Satisfied All Four Prongs of the Preliminary Injunction Standard

The court is convinced that ASII has made a clear showing that it is entitled to preliminary relief. The issue deserving the most attention in this regard is prong (1) of the *Winter* test: likelihood of success on the merits. The parties spend very little time briefing the other three criteria. (*See* Mot. at 15-18; Resp. (Dkt. # 19) at 27-30.) An analysis of each of the *Winter* criteria appears below.

### 1. Likelihood of Success on the Merits

Before a court can grant a preliminary injunction, it must be satisfied that success on the underlying merits of the claim is not only possible, but "likely." *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009).

In this case, ASII is likely to succeed on the merits. For ASII to succeed, the court would ultimately need to grant one of the Plaintiff's two requests for relief, granting either: (1) an injunction; or (2) a declaratory judgment that Defendants' threatened actions would be unlawful. (*See* Compl. at 9-10.) Thus, to decide whether ASII is likely to succeed on the merits, the court must inquire whether Defendants' threatened strike would be unlawful under the RLA.

---

[2] The Ninth Circuit also uses a "sliding scale" test, under which a stronger showing of one of these factors allows for a lesser showing of some others. *Alliance for the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Here, the court finds that the Plaintiffs meet the *Winter* standard, making it unnecessary to apply the alternative standard.

Under the RLA, employees of railroad and airline carriers have a duty to attempt to resolve all disputes related to employment in a way that will not disrupt commerce:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce . . . .

45 U.S.C. § 152. Specifically, under the RLA, all disputes between railroad or airline carriers and their employees must be resolved through statutorily-prescribed alternative dispute resolution mechanisms. *See, e.g., Summit Airlines, Inc. v. Teamsters Local Union No. 851*, 628 F.2d 787, 789-95 (2nd Cir. 1980); *see also* Lisa Catherine Tulk, *The 1926 Railway Labor Act and the Modern American Airline Industry: Changes and "Chaos" Outline the Need for Revised Legislation*, 69 J. OF AIR L. & COM. 615, 620-24 (2004). Different kinds of disputes call for different dispute resolution mechanisms. *See id.*

However, what is common to each flavor of dispute under the RLA is that employees are never permitted to strike as a first step—i.e., to take self-help action before exhausting statutory dispute resolution procedures. If the dispute in question is a so-called "minor" dispute, the RLA requires that it be resolved through binding arbitration by the National Air Transport Adjustment Board; strikes are never permissible for minor disputes. 45 U.S.C. § 185. If the dispute is "major," employees may strike, but only after giving written notice to the carrier, negotiating in good faith, and (if requested by either party) submitting to protracted mediation by the National Mediation Board followed by a sixty-day "cooling off period." 45 U.S.C. § 156. If the dispute is a "representation dispute," it is subject to the exclusive jurisdiction of the National Mediation Board.

*Western Airlines, Inc. v. Int'l Bhd. Of Teamsters*, 480 U.S. 1301, 1302 (1987) (O'Connor, J., in chambers). Not one of these classifications allows for employees to strike as a first step without first satisfying any of the prescribed statutory procedures.

But that is exactly what is happening in this case: Defendants, who are subject to the RLA as employees of a carrier,[3] are attempting to strike as a first step before undertaking any statutorily-prescribed dispute resolution mechanisms. Under the RLA, this is unlawful.

Because strike-first tactics are unlawful under the RLA, ASII is likely to succeed in obtaining a declaratory judgment that Defendants may not strike until they complete the required procedures, and may succeed in obtaining a permanent injunction to the same effect. Thus, the court finds that the Plaintiff has satisfied the first prong of the preliminary injunction test.

Defendants make a contrary argument that is unpersuasive. They argue that they can in fact strike as a first step because they are not part of a union. (Resp. (Dkt. # 19) at 17-21.) They argue that minor and major disputes can only exist between a carrier and a recognized union, and that such disputes are subject to the statutorily-prescribed procedures only if the "employees" involved are organized as a union. (*Id.* at 17.) They argue that the dispute at hand can be resolved in a strike-first fashion because it is not

---

[3] Neither side disputes that ASII is a "carrier" as that term is defined in the RLA. To be a carrier, a company must satisfy a two-part test, with one part relating to ownership or control and the other relating to the company's functions vis-à-vis transportation. 45 U.S.C. § 151; *see also Delpro Co. v. Bhd. Ry. Carmen of U.S. and Can., AFL-CIO*, 676 F.2d 960, 963 (3rd Cir. 1982). On several occasions, the National Mediation Board has found that ASII is a carrier. *See, e.g., Aircraft Serv. Int'l Grp.*, 31 NMB 508 (2004).

ORDER- 7

minor or major, and it is not a representation dispute—rather, it is a strike "protesting retaliation or safety concerns." *Id.* Accepting that this argument has some logical appeal, the court nevertheless rejects it. As an initial matter, Defendants misunderstand the structure of the RLA. The RLA does, in fact, divide disputes into three categories. But Defendant misunderstands what those categories are. The Second Circuit sheds light on this topic in *Summit Airlines*, where the Court explains that the three categories are in fact minor disputes, major disputes, and a "catch-all" category which includes not only representation disputes but other disputes as well. 628 F.2d at 789-95. This interpretation is based on an extensive examination of the legislative history and purpose of the statute. *Id.* As the Second Circuit explains, all three categories are subject to mandatory dispute resolution processes before self-help action is permitted because otherwise those procedures would be "meaningless." *Id.* at 791-94. The Second Circuit's analysis is equally applicable to the dispute at hand, which, under either party's version of the facts, likely fits within the RLA's mandate and into the "catch-all" category just like a representation dispute. Thus, the RLA prescribes a dispute resolution process for this dispute, and it is unlawful for the Defendants to strike before completing that process. *Id.*

The court also rejects Defendants' argument for two other closely-related reasons. First, Defendants' interpretation would wholly frustrate the RLA's overriding mandate, which is to impose a duty on carriers and their employees to "settle *all* disputes, whether arising out of the application of such agreements *or otherwise*, in order to avoid any interruption to commerce . . . ." *See* 45 U.S.C. § 152 (emphasis added). It would also

frustrate the stated purpose of the RLA, which is to "avoid any interruption to commerce or to the operation of any carrier engaged therein," and "to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions . . . ." 45 U.S.C. § 151a. These provisions demonstrate that the RLA is not so narrow that it only applies to disputes between carriers and recognized unions. By its terms, it applies to any dispute between a carrier and its "employees." *See id.* Accordingly, the court must reject Defendants' argument that non-unionized employees do not fall within the ambit of the RLA.

Second, Defendants' interpretation would lead to an absurd result. Under Defendants' theory, it would be lawful for non-unionized employees to strike as a first step but unlawful for unionized employees to do so. Thus, employees who have not gone to the trouble of organizing could strike at will, giving them substantially greater leverage against their employers than a unionized workforce. This is plainly not what the RLA set out to achieve. The court rejects Defendants' arguments, finding that the strike here would likely be unlawful under the RLA and therefore ASII is likely to succeed on the merits.

**2. Irreparable Harm**

In order to demonstrate irreparable harm, the plaintiff must show not merely that irreparable harm is possible absent an injunction, but that it is "likely." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). To show irreparable harm, there must be a significant threat of irreparable injury, irrespective of the magnitude of the injury. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir.

ORDER- 9

1999). Economic injury alone will not establish irreparable injury, but intangible injuries, such as damage to goodwill, can suffice. *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

In this case, the parties devote very little briefing to irreparable harm. This is likely because the threat of irreparable harm is largely self-evident from the underlying facts of the case. In essence, Defendants are threatening to shut down SeaTac Airport: if the court does not issue an injunction, Defendants are likely to strike; if Defendants strike, roughly 75 percent of the airplanes at SeaTac Airport could go without fuel. This would cause irreparable harm not only to ASII, which stands to lose a substantial amount of goodwill and business opportunity, but also to the public at large: a cancelled flight (or a whole day or week of cancelled flights) inflicts harm that cannot be undone. The court finds that irreparable harm is likely in the absence of an injunction.

### 3. Balance of Equities

In balancing the equities, a court must weigh the threatened harm to the plaintiff against the harm that a preliminary injunction would cause to the defendant. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002). "[T]he real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is *improperly* granted or denied." *Id.* (emphasis in original). It is up to the district court to assign weight to particular harms. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010).

Here, the balance of equities favors ASII. An improperly granted injunction would impact Defendants only, merely delaying resolution of their dispute with ASII.

ORDER- 10

1  On the other hand, an improperly withheld injunction could cause SeaTac Airport to be
2  shut down erroneously, having a severe adverse impact on both the public and Plaintiff.
3  In light of this, the court finds that the balance of harms favors granting an injunction.

### 4. Public Interest

To determine whether an injunction is in the public interest, courts consider the potential impact an injunction could have on nonparties and the public at large. *Stormans*, 586 F.3d at 1138-39. If the impact of the injunction goes beyond the parties in the dispute and has consequences for the public, courts of equity may, and do, go further both to give and withhold relief in furtherance of the public interest than they would where only the parties to the dispute are affected. *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1114-15 (9th Cir. 2010).

Here again, the parties devote very little briefing to whether an injunction would be in the public interest; and again, this is likely attributable to the fact that an unlawful strike would plainly be contrary to the public interest. Granting or withholding an injunction is likely to have a direct impact on the public, particularly in the event that a strike materializes and 75 percent of the airplanes at SeaTac Airport cannot be refueled, effectively shutting down the region's primary airfield. The public would not be served by allowing a strike to go forward, whereas an injunction might prevent commerce from being severely disrupted.

Having examined all four *Winter* factors, the court concludes that a preliminary injunction is an appropriate remedy. All that remains is to settle the question of whether the court has jurisdiction to issue this remedy.

## C. The Court Has Authority to Issue an Injunction

Defendants argue that the court has no authority to issue an injunction because the NLGA forbids it from doing so. 29 U.S.C. § 101. The NLGA, as a general matter, prohibits federal courts from issuing injunctions in cases involving or growing out of labor disputes:

> No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter.

29 U.S.C. § 101. Defendants argue that this provision bars the court from enjoining a non-unionized workforce and therefore deprives the court of jurisdiction to issue an injunction.

But the Supreme Court has already considered and rejected this argument. In a 1987 case, the Supreme Court held that the NLGA does not prevent district courts from enjoining violations of the RLA:

> If the RLA is to function as its framers intended, compliance with its mandates obviously is essential. To accommodate the competing demands of the RLA and the Norris-LaGuardia Act, our cases establish that the Norris-LaGuardia Act "does not deprive the federal court of jurisdiction to enjoin compliance with various mandates of the Railway Labor Act. . . ."[4]

---

[4] The Court limited this statement somewhat, saying that "[e]ven when a violation of a specific mandate of the RLA is shown, '[c]ourts should hesitate to fix upon the injunctive remedy . . . unless that remedy alone can effectively guard the plaintiff's right.'" That standard is met here; it is difficult to imagine what remedy, other than an injunction, could protect ASII's rights under the RLA. Furthermore, as demonstrated above, the requirements of a preliminary injunction are all met.

ORDER- 12

*Burlington N. R.R. Co. v. Bhd. Of Maint. of Way Employes*, 481 U.S. 429, 445 (1987).[5] The Supreme Court elaborated several years later, holding that district courts have jurisdiction and power "to issue necessary injunctive orders to enforce compliance with the requirements of the RLA 'notwithstanding the provisions of the [NLGA]'" because the "specific provisions of the [RLA] take precedence over the more general provisions of the [NLGA]." *Pittsburgh & L.E. R. Co. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 490, 513 (1989).

Defendants have phrased this "exception" to the NLGA in a slightly different way, arguing that a district court can enjoin an RLA violation only if a party is attempting to use self-help in a dispute that the RLA has committed to that statute's exclusive dispute resolution procedures. (Resp. at 15 (citing *Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Local 174*, 203 F.3d 703 (9th Cir. 2000) (en banc)).) Even under this interpretation, the court has jurisdiction to issue an injunction. As explained above, the RLA commits this dispute exclusively to alternative dispute resolution procedures. Defendants ignored these procedures and threatened to strike. Accordingly, the court can enjoin them from taking self-help actions. *Id.*

Rejecting Defendants' reading of the interplay between the RLA and the NLGA, the court holds that it has authority to issue a preliminary injunction.

---

[5] In *Burlington Northern*, the Supreme Court found that the district court lacked jurisdiction to issue an injunction because the enjoined action was not, in fact, a violation of the RLA. 481 U.S. at 451-52. This in no way diminishes the precedential value of the Court's plain statement of the general rule that a district court *does* have the power to enjoin actions that *are* violations of the RLA. *Id.* at 445.

## IV. CONCLUSION

It is hereby ORDERED that ASII's motion for a preliminary injunction is GRANTED; and it is further ORDERED that Alex Popescu, Working Washington, Jonathan Rosenblum, and John Does 1-100,[6] and their officers, agents, employees, and members are hereby preliminarily enjoined from in any manner or by any means directing, calling, causing, authorizing, inducing, instigating, conducting, continuing, encouraging, or engaging in any strike, work stoppage, sick-out, slow-down, work-to-rule campaign, or other concerted action in violation of the RLA which is intended to interfere with ASII's normal operations.

Dated this 18th day of October, 2012.

JAMES L. ROBART
United States District Judge

---

[6] The complaint seeks relief against John Does 1-100, which ASII defines as "individuals whose identities currently are unknown but who have acted in concert with the named Defendants, and with each other, to encourage, support and/or engage in the illegal job action from which ASII seeks relief in this action." (Compl. ¶ 15.)

ORDER- 14